**Case No. 09-4075**

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff/Appellee,**

**v.**

**HARRISON BEGAYE,**

**Defendant/Appellant.**

---

On Appeal from the United States District Court
For the District of Utah, Central Division
The Honorable Dale A. Kimball, District Judge

---

**CORRECTED BRIEF FOR THE UNITED STATES OF AMERICA**

---

BRETT L. TOLMAN
United States Attorney
District of Utah

STEPHEN J. SORENSON
Assistant United States Attorney
185 South State Street, Suite 300
Salt Lake City, Utah 84111-1506
Telephone (801) 524-5682
Attorneys for Plaintiff/Appellee

**ORAL ARGUMENT IS NOT REQUESTED
(ATTACHMENTS INCLUDED IN SCANNED PDF FORMAT)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF PRIOR AND RELATED APPEALS. . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     *Ja.B. Interview with FBI*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     *Indictment and plea agreement*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     *Presentence report*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     *Government's motion for upward departure and Begaye's response*. . . . . 6

     – *DVD of FBI interview*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     – *Psychological assessments*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     – *Begaye's response*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     *Sentencing*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**I.     The District Court Did Not Abuse Its Discretion in Granting an Upward Departure From the Sentencing Guideline Range Based on Extreme Psychological Injury to Begaye's 11-Year-Old Daughter (USSG § 5K2.3) and Extreme Conduct by Begaye (USSG § 5K2.8).**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     *Standard of Review*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     *Discussion*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*(a)   Expert or Comparative Evidence That a Victim's Injury or Perpetrator's Conduct Exceeded That Normally Experienced in a Case of Aggravated Sexual Abuse Was Not Required.*. . . . . . . . . . . . . . 17

*(b)   The District Court Was Well Within Its Discretion, Based on Its Observation of the Victim and on Its Review of the Uncontested Mental Health Assessments Before It,  in Concluding That Begaye's Daughter's Psychological Injury Was Sufficiently Extreme to Justify an Upward Departure Under USSG § 5K2.3.*. . . . . . . 21

*(c)   Based on Its Factual Finding That Begaye's Sexual Abuse of His Daughter Occurred Repeatedly Over a Period of Years, the District Court Was Also Well Within Its Discretion in Concluding That Begaye's Conduct Was Not AlreadyTaken Into Account in the Elements of the Offense and Guideline Adjustments, and That an Upward Departure Was Justified Under § 5K2.8.*. . . . . . . . . . . . . . . . . . 25

**II.    The District Court Sufficiently Explained the Basis for Its Sentence and Upward Departure, and Begaye Has Established No Plain Error in the Explanation.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Discussion*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE

CERTIFICATION OF DIGITAL SUBMISSIONS

# TABLE OF AUTHORITIES

STATUTES                                                                    PAGE

18 U.S.C. § 113(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 113(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26

18 U.S.C. § 2241(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 5, 11, 13, 16, 20, 26

18 U.S.C. § 2241(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2241(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

18 U.S.C. § 3553(b)(2)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 3553(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28


CASES

*Gall v. United States*, 128 S.Ct. 586 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Koon v. United States*, 518 U.S. 81(1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rita v. United States*, 551 U.S. 338 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

*United States v. Alapizco-Valenzuela*, 546 F.3d 1208 (10th Cir. 2008). . . . . . . . . 16

*United States v. Algarate-Valencia*, 550 F.3d 1238 (10th Cir. 2008). . . . . . . . . . 16

*United States v. Atkinson*, no. 94-4229, 1995 WL 620142
        (10th Cir. Oct. 16, 1995) (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Bayles*, 310 F.3d 1302 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . 20

*United States v. Booker*, 543 U.S. 229 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Calzada-Maravillas*, 443 F.3d 1301 (10th Cir. 2006). . . . . . . . . . 17

*United States v. Chatlin*, 51 F.3d 869 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . 23, 26

*United States v. Checora*, 175 F.3d 782 (10th Cir. 1999). . . . . . . . . . . . . . . . . . 27

*United States v. Cook*, 949 F.2d 289 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . . . 18

*United States v. Davis*, no. 99-2063, 2000 WL 387050
    (10th Cir. Apr. 17, 2000) (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Fawbush*, 946 F.2d 584 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . 26

*United States v. Gall*, 552 U.S. 38, 128 S.Ct. 586, 597-98 (2007). . . . . . . . . . . . . . 9

*United States v. Haley*, 529 F.3d 1308 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . 20

*United States v. Kelly*, 1 F.3d 1137 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006) (per curiam). . . . . . . . . . 16

*United States v. Martinez*, 512 F.3d 1268 (10th Cir. 2008). . . . . . . . . . . . . . . . . 16

*United States v. Mitchell*, no. 96-6292, 1997 WL 325920
    (10th Cir. June 16, 1997) (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*United States v. Okane*, 52 F.3d 828 (10th Cir. 1995). . . . . . . . . . . . . . . . . . 18-19

*United States v. Passmore*, 984 F.2d 933 (8th Cir. 1993). . . . . . . . . . . . . . . . . . 24

*United States v. Phipps*, 368 F.3d 505 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . 24

*United States v. Robertson*, 568 F.3d 1203 (10th Cir. 2009). . . . . . . . . . . . . . 17, 20

*United States v. Sells*, 541 F.3d 1227 (10th Cir. 2008). . . . . . . . . . . . . . . . . . 17, 28

*United States v. Uscanga-Mora*, 562 F.3d 1289 (10th Cir. 2009). . . . . . . . . . . 27, 29

*United States v. Zamarripa*, 905 F.2d 337 (10th Cir. 1990), *overruled on other*
    *grounds in Williams v. United States*, 503 U.S. 1934 (1992). . . . . . . . . . . . 25

## UNITED STATES SENTENCING GUIDELINES

USSG §§ 2A3.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

USSG §§ 2A3.1(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

USSG § 2A3.1(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19, 26

USSG § 2A3.1(b)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19, 24

USSG § 2A3.1(b)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21, 26

USSG § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

USSG § 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 26-27

USSG § 5K2.0(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

USSG § 5K2.0(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG § 5K2.0(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

USSG § 5K2.21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

USSG § 5K2.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*

USSG § 5K2.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*

## STATEMENT OF PRIOR AND RELATED APPEALS

There are no prior or related appeals.

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 09-4075 |
| Plaintiff/Appellee, | : | |
| vs. | : | BRIEF FOR THE UNITED STATES |
| HARRISON BEGAYE, | : | |
| Defendant/Appellant. | : | |

_____ _____

## STATEMENT OF THE ISSUES

_____1.    In sentencing Begaye, did the district court abuse its discretion by granting an upward departure from the Sentencing Guideline range based on extreme psychological injury (USSG § 5K2.3) and extreme conduct (§ 5K2.8)?

(a)   Should the court have required expert or comparative evidence that his 11-year-old daughter's injury and Begaye's conduct were beyond that normally experienced in a case of aggravated sexual abuse?

(b)   In light of its observation of the victim and of the uncontested mental health assessments before it, did the district court abuse its discretion in concluding that the psychological injury suffered by Begaye's daughter was sufficient for an upward departure under § 5K2.3?

(c)   Based on the district court's factual finding that Begaye's sexual abuse of his daughter occurred repeatedly over a period of years, did the court abuse its discretion in concluding that Begaye's conduct was not already taken into

account in the elements of the crime and guideline adjustments, and that an upward departure was justified under § 5K2.8?

2.  Has Begaye demonstrated plain error in the district court's explanation of the upward departure?

## STATEMENT OF THE CASE

Appellant Harrison Begaye pled guilty to one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 1153(a).  A Presentence Report prepared in Begaye's behalf computed a guideline range of 210 to 262 months' imprisonment.  The United States filed a motion for upward departure to 360 months.  Begaye opposed the motion and requested a downward departure to 120 months or less.  The district court sentenced Begaye to 25 years' (300 months') imprisonment, recognizing upward departures for extreme psychological injury to a victim (USSG § 5K2.3) and extreme conduct by the perpetrator (§ 5K2.8).  Begaye filed a timely notice of appeal and argues that the sentence was procedurally unreasonable because the departures were not supported by the record.

## STATEMENT OF FACTS

*__Ja.B. Interview  with FBI.__*    Acting on a complaint from school officials, regional social service workers interviewed Appellant Harrison Begaye's five children, all of whom appeared to fear for their safety.  (Vol. III at 2 ¶¶ 6-7.)  They reported physical abuse by their father.  (*Id.* at 2 ¶ 7, 6 ¶ 33.)

Begaye's 11-year-old daughter, Ja.B., was interviewed by an FBI agent on

2

May 16, 2007. (Supp. Vol. VIII, Doc. 97, exh. 2.)[1] When the subject of sexual abuse was broached, Ja.B. responded, "My dad does that to me," but stated, "I'm scared to tell," and said that if she told, he would "throw us around, all of us." (*Id.* at 12:57-13:58.) Ja.B. reported that Begaye had raped her many times at their home, beginning when she was in the first grade and occurring about once a week. (*Id.* at 15:09-16:11, 43:43-44:12, 45:10-22, 1:10:36-1:11:00, 1:19:11-1:20:12.) Begaye informed Ja.B. that if she told anyone, she would be punished. (*Id.* at 20:35-57.) During the assaults, Begaye would remove her pants and sometimes she would be on top and sometimes on the bottom. "When I tr[ied] to get off, he'[d] pull my legs down," (*id.* at 46:16-28, 51:30-53:40), hold her hands, or otherwise force her to continue (*id.* at 55:27-50, 56:49-57:20). Ja.B. demonstrated the manner in which Begaye would "grab me and push me to it." (*Id.* at 1:07:23-1:08:36.) He would ask, "Does that feel good? I'll always say, 'no.'" (*Id.* at 47:10-30, 1:11:26-35.)

*__Indictment and plea agreement.__* Begaye was indicted in a Superseding Indictment on six counts: aggravated sexual abuse of Ja.B., a child under the age of 12, within Indian country, in violation of 18 U.S.C. §§ 2241(c) and 1153(a)

---

[1] The interview was recorded, and a DVD copy of the interview was submitted to the district court with the government's motion for an upward departure (Supp. Vol. VIII, Doc. 97). The tracking numbers used here begin at "0:00" at the start of the DVD. Begaye did not object to the government's request that the district court review the DVD prior to sentencing. (*Id.* at 2 n. 1.)

The 11-year-old daughter is referred to in the Superseding Indictment and in the Appellant's Brief as "Ja.B." and in the PSR as "J.B." She will be referred to in this brief as "Ja.B."

(Counts I-III); assault of Ja.B. causing serious bodily injury (18 U.S.C. § 113(a)(6)

(Count IV); assault of Je.B. with a dangerous weapon, a BB gun (§ 113(a)(3)

(Count V); and assault of Jam.B. with intent to do bodily harm with a tire iron

(§ 113(a)(3) (Count VI).  (Vol. I, Doc. 59.)  (Je.B. and Jam.B. are two of Begaye's

other children.)  A Felony Information was subsequently filed, alleging one count

of aggravated sexual abuse under §§ 2241(a)(1) and 1153(a).[2]  (Vol. I, Doc. 73.)

Begaye pled guilty to the single count and, in a written plea agreement,

acknowledged the following conduct:

> During the spring of 2007 but no later than May 8, 2007 I knowingly
> engaged in sexual intercourse with J.B.  I used force to engage in
> sexual intercourse with J.B.  The sexual intercourse occurred at my
> residence which is within the boundaries of the Navajo Nation.  I am
> an enrolled member of the Navajo Nation.

(Vol. I, Doc. 74 at 3 ¶ 11.)

   ***Presentence report.***   The Presentence Report (PSR) prepared in Begaye's

behalf recounted that Begaye has six children, ages 5 to 14, with his wife Rena

(and other children with an earlier wife).  (Vol. III at 8-9 ¶¶ 44-45.)  When social

service workers interviewed five of the children, they all reported physical abuse

---

[2]  Section 2241(a)(1) directs imprisonment "for any term of years or life" for
a person who "knowingly causes another person to engage in a sexual act by using
force against that person."  (Subsection numbering omitted.)  Section 1153(a)
provides that "[a]ny Indian who commits against the person . . . of another Indian
. . . incest, . . . an assault against an individual who has not attained the age of 16
years, [or] felony child abuse . . . shall be subject to the same law and penalties as
all other persons committing any of the above offenses . . . ."  (Section 2241(c),
with which Begaye was charged in the Superseding Indictment, provides that one
who "knowingly engages in a sexual act with another person who has not attained
the age of 12 years" will be imprisoned "for not less than 30 years or for life.")

by their father – one had a BB bullet lodged in his nose, four had visible marks where Begaye had whipped them with whips, bricks, or sticks, and all had red poke marks from horse syringes used by Begaye for punishment. (*Id.* at 2 ¶ 7, 6 ¶ 33.)

The PSR summarized the FBI interview with Ja.B. (Vol. III at 2 ¶ 8.) She reported that Begaye had engaged in vaginal intercourse with her approximately once per week, beginning when she was in the first grade, in the family residence. (*Id.*; *see supra* at 3-4.) Ja.B. also described daily physical abuse of her mother, siblings, and herself (Begaye hitting them with whips or throwing shoes and toys at them). (*Id.* at 3 ¶ 9.)

When interviewed by FBI agents, Begaye acknowledged having had sexual intercourse with Ja.B. over the past three months. (Vol. III at 3-4 ¶ 12; Vol. I, Doc. 77, Atchmt. A.) Through counsel, he provided the PSR writer with this statement: "I admit I had sex with [Ja.B.] three times in the Spring of 2007. I am sorry for what I did to her." (Vol. III at 5 ¶ 20.) Ja.B. also provided a written statement for the PSR, stating that she was "really sad" when she had to "live away from my mom" because of "what my dad did," but acknowledging being happy to live currently with her grandmother. (*Id.* at 4 ¶ 15.) Asked on a written form what she would do if she were the judge in Begaye's case, Ja.B. marked the responses, "A. Send to jail; E. Stay away from kids; and F. Go to counseling." (*Id.* at 4 ¶ 16.)

The PSR relied on an offense level of 37 for an offense involving conduct described in 18 U.S.C. § 2241(a) [USSG §§ 2A3.1(a)(2) & (b)(1)], a victim under 12 years old [§ 2A3.1(b)(2)(A)] who was in the custody of the defendant

5

[§ 2A3.1(b)(3)(A)], minus an adjustment for acceptance of responsibility [§ 3E1.1]. (Vol. III at 5-6 ¶¶ 21-32.)  With a criminal history category of I, the guideline range of imprisonment was 210 to 262 months.  (*Id.* at 8 ¶ 39, 11 ¶ 61.)

### *Government's motion for upward departure and Begaye's response.*  The

United States filed a Motion for Upward Departure and Upward Sentencing Variance, based on (1) Begaye's extreme conduct that was "unusually heinous, cruel, brutal, or degrading to the victim" under USSG § 5K2.8, (2) Begaye's physical abuse of Ja.B. and her siblings, reflecting dismissed and uncharged conduct under § 5K2.21, and (3) Ja.B.'s "psychological injury much more serious than normally resulting from commission of the offense" under § 5K2.3.  (Supp. Vol. VIII, Doc. 97 at 4-7.)  The government cited other exceptional circumstances warranting a departure under § 5K2.0(a)(2)(B), including (a) the number of years Ja.B. was sexually abused by her father (from first or second grade until she was removed from the home at age 11), and (b) the number of times she was raped by Begaye (over 100 times, based on a calculation of abuse once a week for at least three years).  (*Id.* at 7-9.)[3]  Finally, the United States urged that the sentencing factors in 18 U.S.C. § 3553(a) justified an upward variance, based on multiple

---

[3] As noted above, on May 16, 2007, Ja.B. told the FBI interviewer that Wright first raped her when she was in the first grade and that this continued about once a week until two weeks before the interview.  (Supp. Vol. VIII, Doc. 97, exh. 2 at 1:10:36-1:11:00, 1:19:11-1:20:12; Vol. III at 2 ¶ 8.)  On May 1, 2008, in an interview with Dr. Michael Riley, a psychologist, Ja.B. reported that her father raped her from the time she was in the second grade.  (Supp. Vol. VIII, Doc. 97, exh. 8 at 18.)  The United States thus based its estimate of the number of occurrences on a period of at least three years.  (*Id.* at 8.)

sexual assaults over a period of years and Begaye's long-term physical abuse of his children.  (*Id.* at 9-10.)  The government recommended a sentence of 360 months.  (*Id.* at 1, 10.)

– ***DVD of FBI interview.***    Attached to the government's motion was the DVD recording of Ja.B.'s initial interview with an FBI agent on May 16, 2007.  (Supp. Vol. VIII, Doc. 97, exh. 2.)  Begaye did not object to the DVD or to the district court's review of it prior to sentencing.  (Supp. Vol. VIII, Doc. 97 at 2 n. 1.)

– ***Psychological assessments.***    Also appended to the government's motion were mental health assessments of Ja.B. by Linda A. Eubank, M.A., a licensed professional certified counselor with Navajo Ministries of Farmington, New Mexico, dated October 24, 2007, April 2, 2008, and July 16, 2008 (Supp. Vol. VIII, Doc. 97, exh. 7), and a psychosocial assessment of Ja.B. by Dr. Michael D. Riley of Southwestern Behavorial Services, LLC, of Farmington (*id.,* exh. 8).

At their first visit in October 2007, Ms. Eubank diagnosed post-traumatic stress disorder and adjustment disorder with chronic anxiety, DSM-IV §§ 309.81 and 309.24.  (Supp Vol. VIII, Doc. 97, exh. 7 at 1.)  She reported that Ja.B. was experiencing "anxiety upon exposure to stimuli symbolizing trauma" as well as intrusive memories, generalized anxiety, restlessness, and recurrent dreams of trauma.  (*Id.*)  She recommended medication for the traumatic dreams.  (*Id.*)

Slightly over five months later, Ms. Eubank reached the same conclusions, also stating that Ja.B. complained of "seeing visions and having sleep issues."  (Supp. Vol. VIII, Doc. 97, exh. 7 at 3.)  Ja.B. "was not oriented for person, place

and time," her affect was constricted and her mood anxious, her recent and remote memory mildly impaired, and her motor activity sometimes "characterized by psychomotor agitation." (*Id.*) Ja.B. admitted still having visions. Before she was moved from their home, her "mother and father gave her Peoty [peyote] to get her to cooperate and work harder." (*Id.* at 4.)

On July 16, 2008, over three months later, Ms. Eubank's diagnosis and observation of symptoms remained the same with the addition of generalized anxiety disorder. (*Id.* at 5.) Ja.B. had again been seen by a child psychiatrist and was prescribed three months' medication "to stop hallucinations." The length of treatment anticipated was "Ongoing," with Ja.B. seen as adjusting well to her current environment. (*Id.* at 6.)

In his assessment, dated May 6, 2008, Dr. Riley noted that Ja.B. "states that her father raped her from the time she was in the 2nd grade and that the rapes continued until the children were removed from the home." (Supp. Vol. VIII, Doc. 97, exh. 8 at 2, 18.) Based on standardized testing, Dr. Riley characterized Ja.B. as "fearfully dependant, socially anxious, and protectively sad and self-effacing."

> Fearful of further rebuff, she is likely to withdraw from painful peer and family relationships in an effort to prevent herself from venting her dismay more directly.
>
> She may experience increasing loneliness and isolation. Her underlying tensions and emotional dysphoria are present in disturbing mixtures of anxiety and sadness. . . .

(*Id.* at 20-21.) Summarizing current clinical signs, Dr. Riley concluded that Ja.B. "appears to be suffering from anxiety."

8

> Over an extended period of time, this uncomfortable and lonely girl
> has developed a pattern of dejection and discouragement. Blue,
> lacking in self-esteem, and fearful of provoking the ire of others, she
> may have become pessimistic about her future. What few pleasures
> she used to have may have diminished.
>
> . . . Especially troubled by the view that she may be socially and
> physically unattractive, she feels that she has been denied acceptance
> yet continues to yearn for it from others, an outcome she fears may be
> less probable in her future.
> .   .   .
> . . . She probably engages only in those activities that are required by
> school or family obligations. By shrinking her interpersonal milieu,
> she precludes exposure to new and possible benign experiences.

(*Id.* at 21-22.) As to Ja.B.'s long-term treatment, Dr. Riley concluded:

> This child's willingness to engage in therapy, although hesitant, may
> create the impression that progress will be rapid. In fact, therapy is
> likely to recapitulate her inner conflict between wanting acceptance
> and fearing rejection. Sensitive to further humiliation, she may view
> therapy as dangerously self-revealing.
>
> Persuading her to forgo this expectation may prove slow and arduous.
> Support should be provided to ease her tensions, particularly her
> feeling that the pressures and demands of adults inevitably result in
> disapproval.
> .   .   .
> Efforts to enhance this child's social interests must proceed in a slow,
> step-by-step manner so she is not pushed beyond tolerable limits.

(*Id.* at 22-23.)

As an overall assessment, Dr. Riley recommended that parental rights of

Begaye and his wife be terminated "for the safety and emotional stability of the

children." (*Id.* at 35.)

– ***Begaye's response.*** In a sealed Reply to Government's Motion for

Upward Departure and Upward Variance (Supp. Vol. V, Doc. 78), Begaye noted

the teachings in *United States v. Gall*, 552 U.S. 38, 128 S.Ct. 586, 597-98 (2007),

9

that a district court may not presume that the Guideline range is reasonable, and that district courts possess an institutional advantage in making departure decisions by having presided over many more sentencing hearings than the appellate courts. (Supp. Vol. V, Doc. 78 at 2.)  Begaye argued that the sentencing factors in 18 U.S.C. § 3553(a) would justify a sentence of 120 months or less.  His individual characteristics included a "borderline range of intellectual functioning" (so that he would have had a difficult time concocting a claim of only three months' abuse) and good progress in stopping alcohol and drug abuse and completing educational programs in jail.  (*Id.* at 3-5.)  He also argued that federal sentencing policy favors punishment that does not destroy hope and that recent advances make success in treating sexual offenders more likely.  (*Id.* at 6-8.)  He asserted that his acts, while deplorable, did not give rise to injuries much more severe than would normally result from this offense (*id.* at 9-11); and that a departure of the kind requested would effectively result in a minimum mandatory sentence, vitiating the benefit of the plea agreement and discouraging such resolutions in the future (*id.* at 1, 10).

Begaye appended to his Reply an investigator's declaration that a long-time teacher at the Bluff Elementary School had not observed anything in Ja.B.'s behavior that led her to suspect abuse, as well as a neuropsychological evaluation of Begaye himself.  (Supp. Vol. V, Doc. No. 78, Attachments A & B.)  No evaluation of Ja.B. was included, and no objection was raised to the admission of the psychological evaluations appended to the government's motion.

***Sentencing.***   A sentencing hearing was held on April 15, 2009.  (Vol. II.)

10

Begaye reviewed his grounds for opposing an upward departure, arguing that the guideline range was very high as it stood and that a sentence at the low end would support rehabilitation as well as an upward departure would. (Vol. II at 4:7-7:13.) The government noted that the court had viewed the DVD attached to the motion for upward departure, as well as the psychological reports. (*Id.* at 8:2-6.)

The government then discussed aggravating factors justifying an upward departure:

– For extreme conduct under USSG §5K2.8, the forcible nature of the rape of a child, as described by Ja.B. herself in the DVD (Vol. II at 8:9-9:16, 15:12-24).

– For extreme psychological injury under §5K2.3, Ja.B.'s problems with anxiety, P.T.S.D., adjustment disorders, traumatic dreams, and hallucinations. (*Id.* at 20:20-21:11.) The government argued that expert testimony was not required for a showing that injury was more serious than the usual sex abuse case, (*id.* at 20:20-25), and that the time span and number of assaults were significant factors:

> The fact that this went on over a number of years and so many times is not anywhere included in the calculation of the defendant's sentence. The calculation of the sentence and the guideline range in the presentence report would be exactly the same if this happened once. If Harrison Begaye had one time raped his daughter, he would be facing the exact same sentencing guideline range that is in his presentence report. He himself admits that he raped her at least three times. She said it had been going on since first or second grade, approximately once a week. There is no enhancement for that in the guidelines, there is no upward departure for it included, but it is a factor, it is a factor that the Court should consider.

(*Id.* at 23:20-24:7.)

The district court inquired why, in light of these factors, the United States

11

did not insist on a plea to the greater charge of child sexual abuse (18 U.S.C.

§ 2241(c)) rather than a charge of aggravated sexual abuse (§ 2241(a)).  (Vol. II at

9:17-21.)  Counsel for the government responded that the plea had been allowed in

consideration of the victim, who was "in no condition to take the stand and testify

against her father.  Putting her through a trial would have caused cruel and unusual

pain and suffering to that poor girl." (*Id.* at 10:6-17.)  "From the very first of the

plea negotiations . . . I made it very clear that I felt the 30 years was an appropriate

sentence," government counsel continued.  "[O]ne of the things that we discussed

was that I would be asking for an upward departure.  That was kept open in the

negotiations, that he would be allowed to ask for a downward departure and I

would be allowed to ask for an upward departure." (*Id.* at 11:10-22.)

Defense counsel acknowledged that, during plea negotiations, the prosecutor

stated that she believed the case warranted a 30-year sentence, and that the parties

were not limited to arguing for a within-Guideline sentence. (*Id.* at 25:14-26:3.)[4]

Counsel argued, however, that the use of force was already taken into account in

the statute, and that the court should use its discretion to impose a lower sentence.

(*Id.* at 26:3-27:14, 29:23-30:2.)

The district court denied Begaye's motion for downward departure and

granted the government's motion for upward departure, and stated:

---

[4]  The transcript has defense counsel stating at one point, "We did agree that
the parties were not bound, as the rules permit, to make arguments for a non-
guideline sentence." (Vol. II at 26:1-3.)  The context of the statement, however,
makes clear that counsel was indicating that the parties agreed that neither was
bound to argue only for a sentence within the Guidelines.

On the motion for an upward departure brought by the government, I grant the motion and for the following reasons: I find that the crime that was committed, looking at all the facts and circumstances, represented a crime that was unusually heinous, cruel, brutal or degrading to the victim. I will refer to 5K2.8 of the guidelines, the sentencing guidelines and that language, and recognizing in the guideline system that that is anticipated to be a possible ground for an upward departure.

I also find that 5K2.3 represents that where the facts indicate, a psychological injury and a physical injury more serious than normal has been demonstrated to the Court in this case.

(Vol. II at 30:22-31:9.)  The court declined to rely on § 5K2.21, but continued:

What does make sense to me is that Mr. Begaye pled guilty to aggravated sexual abuse under Section 2241(a), and that is an admission of aggravated sexual abuse of another person on an Indian reservation by force or threat. That is what he pled to. I am entitled as the Judge to look at the facts and circumstances that underlie that plea. That includes in this case the fact that he repeatedly had improper sexual intercourse with his young daughter over, the facts demonstrate to me, a period of years. I am looking at those as the actual facts in this case and not looking at those as the facts that underlie or were the basis for another count that has been dismissed. Those are the facts of this case.

Because this statute that I took the plea under and on which I'm sentencing carries a sentence, statutorily, a maximum of life in prison, I'm only looking at those underlying facts to help me decide what is the most appropriate sentence. I'm using the guidelines, which in this case have a range of 210 to 268 months, and I am going above that because of the two reasons that I just indicated, under 5K2.8 and 5K2.3. I am staying generally within the guideline process for doing this.[5]

(*Id.* at 31:13-32:9.)  The district court concluded:

Here I find the facts to be, as anyone would, egregious and wrong and

_____

[5] The judge slightly misstated the range as 210-268, rather than 210-262, but his comments make clear that the sentence was based on 25 years, not on a certain number of months added to the high end of the Guideline range.

bad by any standard. I think sometimes we forget how much time it is too. I find an appropriate sentence to be here a 25-year sentence which is an upward departure of some roughly two and a half years.

I will refer briefly to Section 3553(a) and the factors that are always to be considered by a court in imposing a sentence, and indicate that I feel that a sentence above the sentencing range is necessary to reflect the seriousness of the offense and to promote respect for the law and to provide just punishment, and especially in my view to afford adequate deterrence to others.

I would hope that somehow, and this is always a hope and I never know if it happens, but I would hope that some message gets out that if you do this kind of thing, in particular have sex with a young daughter, that you're looking at 25 years in federal prison at least. . . . I think 25 years is a harsh penalty. I think Mr. Begaye deserves it for what was done in particular to this one young daughter.

I am not ignoring also the other relevant evidence of the abuse that was administered to the other children as well, which is inexcusable also.

(*Id.* at 32:14-33:15.)

The court included supervised release for life in the sentence and, pursuant to the plea agreement, dismissed the Superseding Indictment on the government's motion. (Vol. II at 33:16-18, 34:15-21.)

## <u>SUMMARY OF THE ARGUMENT</u>

1. The district court did not abuse its discretion in granting an upward departure.

(a) A departure from a guideline-range sentence under §§ 5K2.3 and 5K2.8 does not require expert or comparative evidence of victim harm or perpetrator conduct in a "normal" case of aggravated sexual abuse. The district court enjoys an institutional advantage in drawing on its own extensive experience

14

in applying the Guidelines.  Based on its consideration of the totality of the

circumstances, the court may conclude that such departures are warranted without

receiving evidence about what usually happens in other cases.

(b)   The district court's determination that the on-going harm suffered

by Begaye's daughter justified an upward departure for extreme psychological

injury was well within the court's sound discretion.  The court had before it mental

health assessments that, more than a year after removal from her home, the

daughter was still suffering significant trauma-related psychological disorders

resulting from Begaye's long-term abuse, was under continuing medication for

hallucinations, and had a prognosis of "ongoing" mental health treatment.  A

psychosocial evaluation also concluded that the daughter was "fearfully

dependant," may experience increased loneliness and isolation, and had developed

a pattern of dejection, and that her therapy "may prove slow and arduous" and

"must proceed in a slow step-by-step manner."  The court also reviewed a DVD

recording of the daughter's initial 80-minute meeting with an FBI interviewer.

Evidence of extreme conduct under § 5K2.8 can also, as in this case, support a

departure under § 5K2.3 for the psychological harm such conduct causes.

(c)   The conclusion that Begaye's conduct was sufficiently extreme to

justify an upward departure under § 5K2.8 was also squarely within the district

court's appropriate discretion.  The court made a factual finding that Begaye had

improper sexual intercourse with his daughter over a period of years (the record

demonstrated abuse roughly once a week for at least three years, with the

daughter's age approximately 8 to 11). Repetition of abusive conduct over a long period is an appropriate factor to be considered in a departure determination.

2. The district court's explanation was fully adequate to disclose the basis for its sentence and the upward departures, and displayed no error, plain or otherwise. The court also found the sentence reasonable in light of the sentencing factors in 18 U.S.C0. § 3553(a). The explanation made clear that the court fully considered the evidence and the arguments, and no longer exposition was required.

## ARGUMENT

I.   **The District Court Did Not Abuse Its Discretion in Granting an Upward Departure From the Sentencing Guideline Range Based on Extreme Psychological Injury to Begaye's 11-Year-Old Daughter (USSG § 5K2.3) and Extreme Conduct by Begaye (USSG § 5K2.8).**

### *Standard of Review.*

This Court reviews all sentences "for reasonableness under a deferential abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). "Appellate courts review sentencing decisions first for procedural reasonableness, and then for substantive reasonableness." *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008); *United States v. Kristl*, 437 F.3d 1050, 1054-55 (10th Cir. 2006) (per curiam).

A challenge to a district court's departure decision amounts to a claim of procedural error. *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008). When determining whether a district court correctly calculated an advisory Guideline range, this Court reviews legal conclusions de novo and factual findings

16

for clear error, "giving due deference to the district court's application of the Guidelines to the facts." *United States v. Sells*, 541 F.3d 1227, 1235 (10th Cir. 2008). The substantial deference due a sentencing decision extends to the district court's determination that unique factors place a defendant outside the Guidelines heartland. *United States v. Robertson*, 568 F.3d 1203, 1213 (10th Cir. 2009).

### *Discussion.*

#### (a)   *Expert or Comparative Evidence That a Victim's Injury or Perpetrator's Conduct Exceeded That Normally Experienced in a Case of Aggravated Sexual Abuse Was Not Required.*

Even since *United States v. Booker*, 543 U.S. 229 (2005), computations of advisory Guideline ranges and sentencing decisions include a consideration of appropriate departures. *United States v. Calzada-Maravillas*, 443 F.3d 1301, 1305 (10th Cir. 2006). This Court has "steadfastly upheld [the departures'] vitality and instructed district courts to continue to apply them in appropriate cases." *Robertson*, 568 F.3d at 1210 (citation and internal quotation marks omitted). The propriety of an upward departure is governed by "the traditional four-part test:"

> (1) whether the district court relied on permissible departure factors, (2) whether these factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable.

*Id.* at 1211 (citations omitted).

Begaye acknowledges that the two grounds for departure on which the district court relied, §§ 5K2.3 and 5K2.8, are proper grounds for departure and therefore satisfy the first prong. (Aplt. Br. at 7.) He argues, however, that the

17

United States failed to meet its burden as to the second and third prongs – that is, that the record does not provide a factual basis for departure based on victim harm and defendant conduct.  (*Id.*)  Begaye is mistaken (*see* sections (b) and (c), *infra*.)

Begaye's main argument  – that expert or comparative evidence should have been introduced to show the injury and conduct present in a "normal" case of aggravated sexual abuse – applies to both sections.  Guideline § 5K2.3 addresses "psychological injury much more serious than that normally resulting from commission of the offense," and Begaye argues that "the government offered no evidence from which the district court could have determined the typical psychological injuries associated with this offense."  (Aplt. Br. at 11.)  Section 5K2.8 considers a defendant's conduct that is "unusually heinous, cruel, brutal, or degrading to the victim."  Begaye avers that the United States offered no evidence that his cruel and brutal conduct was more so "than that of other perpetrators of aggravated sexual abuse" or that "the use of force is unusual in child sexual abuse cases."  (*Id.* at 8, 9.)  Begaye bases his argument on language in *United States v. Okane*, 52 F.3d 828, 835 (10th Cir. 1995), that "there must be some evidence of both" the injury suffered and the injury normally resulting from that offense in order to support an upward departure under USSG § 5K2.3.  (Aplt. Br. at 11.)

However, *Okane* itself acknowledged that the Court was not required "to address the manner in which the prosecution might attempt to carry its burden of demonstrating the 'normal' level of injury," and noted:

> [R]eliance on an expert witness would likely be sufficient, *but not necessary*.  Under the Guidelines, the touchstone is whether there is

18

evidence before the sentencing court 'possess[ing] a minimum indicia of trustworthiness.' *United States v. Cook*, 949 F.2d 289, 296 (10th Cir. 1991). If so, then that information may be relied upon by the sentencing court in determining the propriety of a particular sentence.

*Okane*, 52 F.3d at 836 n. 8 (emphasis added; other citations omitted). *Okane*'s holding was specific to the particular facts of that case and "the absence of any evidence as to the 'normal' level of psychological injury attributable to a victim of a bank robbery." *Id.* at 835.

Subsequent cases have not treated *Okane* as setting an inflexible, bright-line requirement. This Court and the Supreme Court have repeatedly recognized the institutional advantage the district courts have in making sentencing decisions, including Guideline departures, and have never required that separate expert or comparative evidence be a part of every departure consideration.

Thus, in *United States v. Atkinson*, no. 94-4229, 1995 WL 620142 *6 (10th Cir. Oct. 16, 1995) (unpublished), this Court upheld an upward departure under § 5K2.3, noting that "*Okane* established a general rule, but it did not and could not purport to address every circumstance in every conceivable case." Atkinson's PSR described the "reign of terror" he had mounted by communications threatening his ex-wife, and this Court stated, "Some things are self-evident. This is one of those cases. The court's finding and these facts clearly subsume the predicate finding that 'normal' injury (*whatever* 'normal' might be) . . . does not include the entire panoply" of the victim's psychological injuries. *Id.* at *4, 6. *See also United States v. Mitchell*, no. 96-6292, 1997 WL 325920 *1, 4 (10th Cir. June 16, 1997) (unpublished) (acknowledging the district court's "institutional advantage" while

19

affirming an upward departure based on both extreme psychological injury and extreme conduct); *United States v. Bayles*, 310 F.3d 1302, 1310 (10th Cir. 2002) (the Court gives substantial deference to a district court's determination that the case lay outside the normal heartland of firearms offenses, recognizing the lower court's "institutional advantage" in that decision).

In *Gall v. United States*, 128 S.Ct. 586, 595, 598 (2007), rejecting a standard that would require "extraordinary circumstances" to justify a sentence outside the guideline range, the Court recognized that district courts have "an institutional advantage" in considering whether a sentence outside the guidelines may be reasonable, "especially as they see so many more guidelines sentences than appellate courts do," citing *Koon v. United States*, 518 U.S. 81, 98 (1996).

More recently, reviewing an upward departure, this Court stated:

> Substantial deference is due the district court's determination that unique factors place a defendant outside of the Guidelines heartland. We take due account of the district court's institutional advantage in making these sorts of determinations, and limit our review to determining whether the factual circumstances from the vantage point of the district court make this the atypical case. This standard accounts for the district court's extensive experience in applying the Guidelines, a familiarity we lack.

*Robertson*, 568 F.3d at 1213-14 (citations and internal quotation marks omitted).

*Cf. United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (this Court will usually defer to district court's decision to grant a sentencing variance under 18 U.S.C. § 3553(a), "given the district court's institutional advantage" in that "the sentencing judge, for example, sees and hears the evidence, makes credibility determinations, and actually crafts Guidelines sentences day after day . . .").

20

In his response to the motion for upward departure, Begaye offered no comparative information of his own from which the district court could have concluded that the injury and conduct here were "normal."  Certainly the burden is on the government to justify a departure by a preponderance of the evidence, but it does not fall to either the United States or the courts to mount a comparative analysis for a defendant who believes it would be illuminating.  *E.g., United States v. Davis*, no. 99-2063, 2000 WL 387050 *5 (10th Cir. Apr. 17, 2000) (unpublished) (because the defendant failed to place before the district court cases where similar conduct had not resulted in an upward departure, "thus depriving the district court the benefit of comparison with the case at bar, he has waived the argument that this court should undertake such a comparison on appeal.")

Begaye's proposal that separate evidence of "normal" injury and conduct be required in all departure determinations would ignore the substantial discretion and deference afforded the district courts.  He has put forward no basis for requiring it in this case.

### *(b)   The District Court Was Well Within Its Discretion, Based on Its Observation of the Victim and on Its Review of the Uncontested Mental Health Assessments Before It,  in Concluding That Begaye's Daughter's Psychological Injury Was Sufficiently Extreme to Justify an Upward Departure Under USSG § 5K2.3.*

Upward departures are appropriate "in the case of child crimes and sexual offenses" where "there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by . . . the guidelines . . .".  USSG § 5K2.0(a)(1)(B).  The sections in chapter Five, Part K of the Guidelines, including

21

the two relied on by the district court, identify some of the circumstances that, if not adequately considered in the applicable guideline, may warrant a departure. § 5K2.0(a)(2)(A).

Section 5K2.3 provides that an upward departure may be warranted if a victim suffers psychological injury much more serious than that normally resulting from the offense, where the injury is likely to be of an extended duration.[6]  Begaye argues that the government did not meet its burden of demonstrating that this departure was warranted, that it offered no evidence of "the typical psychological injuries associated with" forcible sexual abuse, and that other sources of abuse "could account for some of Ja.B.'s symptoms."  (Aplt. Br. at 6-7, 11-12.)

First, Ja.B.'s psychological injury was abundantly evident in the record.  The district court had before it expert assessments, based on testing and diagnostic visits over a period from October 2007 to July 2008, the basis and conclusions of

---

[6]  Section 5K2.3 states in full:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range.  The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.  The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

which Begaye did not rebut by any examination of Ja.B. or other professional analysis.  The assessments diagnosed post-traumatic stress disorder and chronic anxiety, with recurrent dreams and hallucinations requiring medication for control, that did not abate but only persisted or worsened over a nine-month period up to a time 14 months after she was removed from her home.  The mental health reports anticipated an "[o]ngoing" length of treatment.  Ja.B.'s psychosocial evaluation, also performed a year after her removal, found her to be "fearfully dependant," having "disturbing mixtures of anxiety and sadness," showing "a pattern of dejection and discouragement," and "shrinking her interpersonal milieu."  The assessment cautioned that further therapy "may prove slow and arduous" and "must proceed in a slow, step-by-step manner."  The professional assessments well established, in the language of § 5K2.3, a "substantial impairment" of Ja.B.'s "psychological, emotional, or behavioral functioning" likely to be of extended duration and manifest in psychological symptoms and changes in behavior patterns.

In addition, the district court had the benefit of viewing the DVD of Ja.B.'s initial interview with an agent, allowing the court its own assessment of the degree of trauma Ja.B. experienced and of the veracity of her account of facts implicated by both departure sections.  The evidence supported the application of § 5K2.3.

Furthermore, cases applying this section rebut Begaye's argument about separate evidence of typical injuries.  In *United States v. Chatlin*, 51 F.3d 869 (9th Cir. 1994), the defendant pled guilty to sexually abusing a minor in Indian country, and the district court relied on §§ 5K2.3 and 5K2.8 to depart upward.  Noting that

23

"[t]here is no hard and fast rule establishing the type and quantum of evidence sufficient to meet [the government's] burden" of supporting the departures, the Court ruled that an upward departure for extreme psychological injury was authorized even though the government's psychological evaluation did not state that the minor suffered greater than normal psychological harm. *Id.* at 874. *See also United States v. Passmore*, 984 F.2d 933, 936 (8th Cir. 1993) (agreeing with the district court that expert testimony is not needed "to recognize such an obvious proposition" that long-term sexual abuse of a minor will cause long-term emotional problems for purposes of § 5K2.3).

Finally, Begaye's speculation that other sources of abuse in Ja.B.'s life "could have" accounted for her psychological harm does not place the district court's decision beyond the range of sound discretion. The government's burden was met here by uncontested expert examinations and the victim's own recorded account. If Begaye had rebuttal evidence, he should have presented it in the district court, rather than asking this Court to engage in post-sentencing fact-finding as to what "could have" been the case.

Viewing the unique circumstances of each case, a defendant's conduct under § 5K2.8 may also support a conclusion that extreme psychological harm resulted under § 5K2.3. *E.g., United States v. Phipps*, 368 F.3d 505, 515-16 (5th Cir. 2004) ("the extreme nature of the defendants' conduct . . . further supports our conclusion that the victim sustained extraordinary psychological damage."). Such is the case here. *See also Mitchell*, 1997 WL 325920 at *4.

24

### (c)  *Based on Its Factual Finding That Begaye's Sexual Abuse of His Daughter Occurred Repeatedly Over a Period of Years, the District Court Was Also Well Within Its Discretion in Concluding That Begaye's Conduct Was Not Already Taken Into Account in the Elements of the Offense and Guideline Adjustments, and That an Upward Departure Was Justified Under § 5K2.8.*

USSG § 5K2.8 provides: "If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct.  Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."  Begaye argues that there was "no evidence" that his conduct was more cruel or degrading than that of other perpetrators of aggravated sexual abuse (Aplt. Br. at 8), and that any upward departure under this section would be based on conduct already accounted for in the elements of the offense and the basic Guideline calculation (*id.* at 9).  This misapprehends both the record and the law.

The district court made a factual finding "that [Begaye] repeatedly had improper sexual intercourse with his young daughter over, the facts demonstrate to me, a period of years."  (Vol. II at 31:19-21.)  No clear error exists in this finding – Begaye does not dispute the finding on appeal, and the minor discrepancy between Ja.B.'s initial recollection that her father's abuse began in the first grade and her later statement to the psychologist that it began in the second grade, has no impact on the finding that the abuse spanned "a period of years."  "[A]n upward departure may be supportable on the basis of [a defendant's] multiple sexual contacts with the same victim . . .".  *United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir.

25

1990), *overruled on other grounds* in *Williams v. United States,* 503 U.S. 1934
(1992). "While repetitive conduct is not specifically mentioned in the guidelines, it
is an accepted basis for upward departure." *Chatlin*, 51 F.3d at 873, citing *United
States v. Fawbush*, 946 F.2d 584, 587 (8th Cir. 1991). Thus, this Court found no
clear error in an upward departure under § 5K2.8, "[g]iven the repetitive and severe
nature of the injuries meted out by the defendant . . .". *United States v. Kelly*, 1
F.3d 1137, 1144 (10th Cir. 1993).

 Begaye's argument that the departure represents a double-counting ignores
the statutory basis for departures in 18 U.S.C. § 3553(b)(2)(A)(i). That section
provides that, in sentencing for an offense under chapter 109A of Title 18 (which
includes § 2241(a)), a court may depart from the Guideline range if it finds "that
there exists an aggravating circumstance *of a kind, or to a degree*, not adequately
taken into consideration by the Sentencing Commission in formulating the
guidelines that should result in a sentence greater than that" within the range.
(Emphasis added.) By definition, any forcible sexual abuse under § 2241(a) will
involve force. But the sentencing court is not bound to treat every such case the
same, whether the victim is forcibly abused one time or 100 times.

 Here, the district court recognized force of a different degree – repetitive
sexual abuse over a period of years – than that reflected in the guideline [USSG
§§ 2A3.1(a) and (b)(1) provide a base offense level for all convictions under 18
U.S.C. § 2241(a)]. Furthermore, Begaye's PSR increased his base offense level by
four levels because his victim was under age 12 [§ 2A3.1(b)(1)] and was in his

26

custody or care [§ 2A3.1(b)(3)(A)].  (Vol. III at 5, ¶¶ 22-25.)  Neither of these factors address the circumstance of repetitive, long-term abuse.  In *United States v. Checora*, 175 F.3d 782, 794 (10th Cir. 1999), this Court rejected a defendant's argument that an upward departure under § 5K2.8 impermissibly double-counted conduct taken into account by the vulnerable-victim enhancement.  Given that the two Guideline sections served different purposes, "it therefore follows the Commission envisioned both could be applied based on the same conduct."  *Id.* Here, § 5K2.3 focuses on victim injury and § 5K2.8 on defendant conduct.  No double-counting occurred, and the enhancement under § 5K2.8 was fully justified by Begaye's long-term brutal conduct.

### II.   The District Court Sufficiently Explained the Basis for Its Sentence and Upward Departure, and Begaye Has Established No Plain Error in the Explanation.

### *Standard of Review.*

"[P]lain error review obtains when counsel fails to render a contemporaneous objection to the procedural adequacy of a district court's statement of reasons at sentencing."  *United States v. Uscanga-Mora*, 562 F.3d 1289, 1293 (10th Cir. 2009).  Plain error occurs where (1) there is error, (2) that is plain, which (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.* at 1295.

### *Discussion.*

Finally, Begaye argues that the district court did not explain the sentencing departure with sufficient specificity.  (Aplt. Br. at 14-15.)

When a district court imposes a sentence outside the Guideline range, the court is to state its reasons for the sentence, giving "the specific reason for the imposition of [the] sentence." 18 U.S.C. § 3553(c)(2). "Sometimes the circumstances [of the case] will call for a brief explanation; sometimes they will call for a lengthier explanation." *Rita v. United States*, 551 U.S. 338, 357 (2007). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 356. Although the court need not "march through § 3553(a)'s sentencing factors," the explanation should be sufficient to permit a reviewing court to discern whether the sentencing court considered those factors. *Sells*, 541 F.3d at 1236 (citation omitted).

The explanation of Begaye's sentence was sufficient by any measure. The district court, having the benefit of briefing and full arguments from the parties as to the substantive reasonableness of a departure, articulated its basis: (1) Begaye's conduct was "unusually heinous, cruel, brutal or degrading to the victim" under § 5K2.8, in light of repeated sexual intercourse with his young daughter over a period of years; and (2) a psychological and physical injury more serious than normal had been demonstrated, meeting the standard in § 5K2.3. The court specifically referred to its review of the § 3553(a) factors, highlighting those it found to be most pertinent (especially adequate deterrence to others). The court mentioned briefly Begaye's physical abuse of his other children, while making clear that that was not as significant a factor as the long-term sexual abuse of Ja.B.

28

(*See* p. 16, *supra*.)  "Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."  *Rita*, 127 S.Ct. at 2469.

Moreover, even if Begaye had demonstrated error in the district court's explanation, he has failed to meet the other prongs of plain error.  To show that an error affected his substantial rights, he must show that, but for the error, his sentence would have been different.  *Uscanga-Mora*, 562 F.3d at 1295.  The record is devoid of any such indication.  Nor has Begaye explained how the public reputation of judicial proceedings will be harmed by a 25-year sentence for a defendant who sexually abused his 8-to-11-year-old daughter weekly over a period of years.

## CONCLUSION

The district court's sentence was procedurally reasonable, based on Guideline departures that were factually supported; and the court's explanation of the sentence shows no plain error.  Begaye's sentence should be affirmed.

RESPECTFULLY SUBMITTED this 19th day of November, 2009.

BRETT L. TOLMAN
United States Attorney


/s/ Stephen J. Sorenson
_____

STEPHEN J. SORENSON
Assistant United States Attorney

s/Stephen J. Sorenson
Utah Bar No. 3049
185 South State Street, Suite 300
Salt Lake City, Utah 84111
(801) 325-3218
stephen.sorenson@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I am an employee of the United States Attorney's

Office, and that two written copies of the foregoing CORRECTED BRIEF FOR

THE UNITED STATES were mailed, postage prepaid, and an electronic copy was

sent via ECF, to the party named below, this 19th day of November, 2009:

STEVEN B. KILLPACK
Federal Public Defender
BRETTA PIRIE
Assistant Federal Public Defender
46 West Broadway, Suite 110
Salt Lake City, Utah 84101


/s/ Stephen J. Sorenson
_____

STEPHEN J. SORENSON
Assistant United States Attorney
s/Stephen J. Sorenson
Utah Bar No. 3049
185 South State Street, Suite 300
Salt Lake City, Utah 84111
(801) 325-3218
stephen.sorenson@usdoj.gov

<u>CERTIFICATION OF DIGITAL SUBMISSIONS</u>

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and that:

(1)    All required privacy redactions have been made; and

(2)    The ECF submission has been scanned for viruses with the most recent version of "Trend Micro OfficeScan," version number 6.5, last updated November 19, 2009, and according to the program, is free of viruses.


/s/ Stephen J. Sorenson
_____
STEPHEN J. SORENSON
Assistant United States Attorney
s/Stephen J. Sorenson
Utah Bar No. 3049
185 South State Street, Suite 300
Salt Lake City, Utah 84111
(801) 325-3218
stephen.sorenson@usdoj.gov